IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ALLEN M. McFADDEN, </br></br>     Plaintiff, </br></br> v. </br></br> CO II MOTLEY, et al., </br></br>     Defendants. | Civil Action No.: LKG-21-1142 </br></br> Dated:  August 17, 2022 |

## MEMORANDUM OPINION AND ORDER

Self-represented Plaintiff Allen M. McFadden brings this civil rights action against CO II Darrance Motley, Sgt. Robert Jordan, Lt. Margaret Ozoemela, Lt. Olubola Sowande and CO John Doe.[1]  On February 8, 2022, Defendants Motley, Jordan, Ozoemela, and Sowande moved to dismiss the Complaint or, alternatively, for summary judgment to be granted in their favor.  ECF No. 26.  Plaintiff responded.  ECF No. 33.  For the reasons discussed below, the Court **GRANTS** Defendants' motion and **DISMISSES** the complaint.[2]

### I.     FACTUAL BACKGROUND

#### A.     Plaintiff's Allegations

Plaintiff alleges that on June 17, 2020, while he was entering the transport van at Jessup Correctional Institution ("JCI") he was assaulted by Defendant Motley and another unidentified officer.  ECF No. 1 at 2.  Before entering the van, Sgt. Jordan strip searched Plaintiff, during which he requested to go to the medical department for chest pains.  ECF No. 5 at 1.  Plaintiff waited outside the van to be seen by a nurse, who arrived about ten minutes later and cleared Plaintiff after taking his vitals.  *Id.*  Plaintiff felt the nurse did a "phony check up" and requested to be taken to the medical department for a second opinion and an EKG test.  *Id.*  Plaintiff states that an

---

[1] The Clerk shall be directed to amend the docket to reflect Defendants' full names.
[2] John Doe has not been identified by Plaintiff nor served with the Complaint, and will therefore be dismissed without prejudice.

"African" lieutenant grabbed his leg irons and threw him into the van, injuring Plaintiff's head, neck and back. *Id.* Defendants refused to allow Plaintiff further medical evaluation. *Id.* at 2.

Plaintiff kept the van door from closing with his feet. *Id.* Motley and the other officer jumped into the van through the rear doors and punched Plaintiff, who was restrained in shackles, in his head, stomach, back, and ribs. ECF No. 1 at 2, 3. Motley held Plaintiff down, choking him, while the other officer exited the van. ECF No. 5 at 2. Lt. Ozoemela then accidentally disbursed a half-second of pepper spray into the van, purportedly authorized by a captain. *Id.*; ECF No. 1 at 2. Neither Lieutenant Ozoemela nor Sowande intervened in the assault and authorized the use of force. *See* ECF No. 1 at 2. According to Plaintiff, CO Bar arrived and intervened in the incident, blocking Motley's access to the van and convincing Plaintiff to be transported without further medical care. ECF No. 5 at 2. When Plaintiff arrived at North Branch Correctional Institution ("NBCI"), he noted that his ankle was bleeding from when he had been thrown into the van. *Id.* Plaintiff states that he suffered a concussion as well as severe neck and back pain. *See* ECF No. 12 at 3.

Plaintiff contends that the assault was in response to his request to see another medical provider before being transported, noting that he did not receive any infraction related to the incident. ECF No. 1 at 3. Additionally, he states that while he was housed at JCI he was considered a problematic inmate because he was responsible for the Warden and Chief of Security being fired. ECF No. 5 at 2.

    **B.**    **Defendants' Response**

Plaintiff filed an Administrative Remedy Procedure ("ARP") NBCI-1199-20 complaining about the June 17, 2020 assault. ECF No 26-4 at 5-6. Sgt. Donna Hill-Mumuni investigated the ARP, finding, after review of the CCTV footage, that there was no evidence of an assault. *Id.* at 7-8. The Warden dismissed the ARP on July 9, 2020, stating that it was without merit as Plaintiff had not provided evidence to substantiate his claim. *Id.* at 4.

Plaintiff appealed the Warden's decision to the Commissioner of Correction on August 26, 2020; it was received on September 1, 2020. ECF No. 26-7 at 3-5. The appeal was investigated by Monica Crest; in an investigative summary dated January 25, 2021, she stated that video footage provided no evidence to support Plaintiff's assault claim and that his medical examination revealed

no visible injuries. *Id.* at 8-9. His appeal was dismissed by the Commissioner of Correction on March 4, 2021. *Id.* at 2.

Plaintiff also submitted an appeal dated November 4, 2020, to the Inmate Grievance Office ("IGO"), which was received on November 17, 2020. ECF No. 26-8 at 3-4. On December 21, 2020, Sandra Holmes, an IGO administrator, sent Plaintiff a letter informing him that he had failed to provide necessary documents with his appeal and directing him to provide those documents within 30 days or risk dismissal of his appeal. *Id.* at 5-6. White avers that Plaintiff failed to provide the required documents and his appeal was dismissed on or about March 9, 2021. *Id.* at 1, ¶ 3.

## II. LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF No. 26. Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Id.* at 261. Because Defendants' Motion is titled as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat it as one for summary judgment and rule on that basis.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A court must view evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Court is mindful that Plaintiff is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III. Discussion

Defendants raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies, entitling them to dismissal of the Complaint. ECF No. 26-2 at 9. If Plaintiff's claims have not been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

>jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* at § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under Section 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see also Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 to -210; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any Department of Correction ("DOC") official or employee. *Id.* However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See id.* at § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. *See* COMAR 12.02.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" *Id.* at 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. *Id.* at 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[3] *Id.* at 12.02.28.18; C.S. § 10-206(a). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the

---

[3] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. *See* COMAR 12.07.01.05(B)(2).

Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

Here, Plaintiff successfully submitted his ARP to the Warden and then an appeal to the Commissioner of Correction. However, Plaintiff failed to properly submit his appeal to the IGO with the required documentation nor did he provide the necessary documents when directed to do so. As Plaintiff failed to exhaust his claims through the administrative process available, the Complaint will be dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, it is this 17th day of August, 2022, by the United States District Court for the District of Maryland, hereby **ORDERED** that:

1. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 26) is **GRANTED**;
2. The Complaint is **DISMISSED** for failure to exhaust administrative remedies;
3. Defendant John Doe is **DISMISSED WITHOUT PREJUDICE**;
4. The Clerk **SHALL PROVIDE** a copy of this Memorandum Opinion and Order to Plaintiff and to counsel; and
5. The Clerk **SHALL CLOSE** this case.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
